In re LINEAS AREAS DE NICARAGUA, S. A., d/b/a Lanica Airlines, Debtor.

Bankruptcy No. 81–00561–BKC–TCB.

United States Bankruptcy Court, S. D. Florida.

Aug. 27, 1981.

Powell, Goldstein, Frazier & Murphy, Paul S. Reichler, Washington, D. C., for debtor.

Semon, Wasko & Ozmant, Lawrence D. Wasko, Washington, D. C., for Batchelor.

Howard, Brawner & Lovett, Linton R. Lovett, Miami, Fla., for Batch-Air, Inc. & International Air Leases, Inc.

Schatzman & Schatzman, Robert A. Schatzman, Miami, Fla., for Julio Mora Mena, foreign representative.

Wright & Silverio, Mark V. Silverio, Miami, Fla., for debtor.

Neal P. Rutledge, Washington, D. C., Co-trustee.

## ORDER APPOINTING CO–TRUSTEE TO ADMINISTER DEBTOR'S ASSETS IN THIS COUNTRY

THOMAS C. BRITTON, Bankruptcy Judge.

The debtor is a bankrupt in Nicaragua. Its stock is owned by the government of

that country. It is an air carrier operating between that country and the United States. It commenced an ancillary case here under 11 U.S.C. § 304. Under § 304(b)(2), I ordered the turnover of the debtor's property to the debtor's foreign representative, the Nicaraguan trustee, Julio Mora Mena, on April 30. Bkrtcy. 10 B.R. 790. (C.P. 21)

Two corporate creditors, which I will refer to as Batchelor, have moved for the appointment of an independent trustee. (C.P. 39) The foreign representative has filed a response. The parties were heard on August 24.

■ A threshold question is whether this court has authority to grant the relief requested. Of course this court cannot remove or replace the foreign representative. Sr. Mena derives his authority from the Nicaraguan court and holds no office under this court. He is a party in this court.

I conclude, however, that § 304(b)(3) which gives this court authority to "order other appropriate relief" permits this court to appoint a co-trustee whose authority and responsibility does not extend beyond the debtor's assets and affairs in this country. I reach this conclusion because the legislative history is clear that this court has been given the maximum flexibility in handling ancillary cases in order that it may fashion appropriate relief tailored to each case, balancing the sometimes divergent interests of comity and protection of claim holders in the United States. § 304(c).

So far as appears before me, Sr. Mena and his counsel, as well as the Nicaraguan government, have fully and meticulously discharged their duties and commitments. There is no basis in this record for any criticism of any of these parties. Movants' earlier suggestions to the contrary have been abandoned before me. Batchelor does, nevertheless, argue that Sr. Mena has a conflict of interest that requires the appointment of an independent co-trustee.

Batchelor has the biggest claim against this debtor, $4 million. That claim is completely disputed by the foreign representative in three pending law suits. The debtor's tangible assets in this country are worth more than $203,000 and it has at least that amount of undisputed claims of U. S. creditors. The order of April 30 permitted Batchelor's litigation to continue, at least up to the point of execution, but the liability has not yet been resolved.

■ If Batchelor has a valid claim and if no other asset of any substance can be located here, the U. S. creditors of the debtor may have to look to Nicaragua for payment, an alternative to be avoided if possible under § 304(c)(2). It is Batchelor's contention that there is another valuable asset, the debtor's 402 certificate (authorization from the C.A.B. to operate in this country).

The certificate was due to expire on July 1. It has recently been extended to October 3. However, the debtor's operation loses sum $60,000 a month. The Nicaraguan government which has covered this loss will cease support and suspend service on August 31. At the same time, the Nicaraguan government is implementing replacement of that national carrier by one of two other corporate instrumentalities. It is doing so because it must borrow the necessary funds and its lender prefers not to assume this debtor's debts. Presumably, therefore, Sr. Mena has no interest in preserving the 402 certificate for this debtor and will do all he can to accomplish his government's wish to replace the debtor by another carrier that has no obligation to the U. S. creditors.

Batchelor recognizes that the debtor's certificate is worthless without the support of Nicaragua and that neither law nor policy in this country necessarily precludes the issuance of more than one such certificate. However, Batchelor argues, an independent trustee could, if convinced himself, persuade the C.A.B. to require Nicaragua to provide reasonable satisfaction for this debtor's liabilities as a condition to any certificate for a Nicaraguan carrier's certification in this country. Such an effort represents the only real prospect for the U. S. creditors to recover more than nominal payment on their claims, unless the Batchelor claims are invalid.

There is no feasible way for me to determine the validity of the Batchelor claims immediately. I must therefore indulge the presumption of validity that B.R. 301(b) accords them. This major creditor is entitled to a disinterested evaluation and presentation of its position before the C.A.B. A conflict of interest prevents Sr. Mena from discharging this duty.

It follows that a co-trustee must be appointed with complete authority and responsibility to determine and present the debtor's position before the C.A.B. To effectively discharge that duty, the co-trustee need have no further responsibility or authority for the debtor's assets in this country or elsewhere. There is no reason to question Sr. Mena's ability to administer the rest of the debtor's assets and affairs.

*Neal P. Rutledge, Esquire* is appointed, therefore, to serve as co-trustee for the debtor with complete authority and responsibility to determine and present the debtor's position with respect to any matter before the C.A.B., but with no other responsibility or authority with respect to this debtor's property or affairs. Bond is waived.